SAMUEL MORRIS AS ADMINISTRATOR, ETC., OF MARY MORRIS, DECEASED, AND OTHERS, RESPONDENTS, *v.* SAMUEL BUDLONG, APPELLANT, IMPLEADED WITH OTHERS.

*When the relations of parties are such as to render a concealment fraudulent.*

A farm owned by one Morris being about to be sold under a decree of foreclosure, his wife applied to one Budlong, her brother, to bid the same in at the sale, discharge the liens and hold the title as security, giving her one year to redeem. In pursuance of this agreement, Budlong bid in the farm, entered into possession, cultivated the same and appropriated the profits thereof and certain articles of personal property to his own use. Men hired by him were also boarded by Mrs. Morris. Moneys were paid to him by Mrs. Morris to apply on the amounts advanced. Thereafter Mrs. Morris applied to him for a statement of the account, but he refused to render it, stating that there was due to him $11,500. This amount she paid to him and took a deed of the farm. Subsequently Mrs. Morris found that Budlong had neglected to credit her with the use of the farm, the value of the articles taken or of the board of the men. *Held,* that considering the relations existing between Mrs. Morris and Budlong, it was a fraud on her not to disclose the fact that he had omitted these credits in stating the amount due to him, and that she was entitled to recover the amount of the overpayment made to him.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

In April, 1856, John Morris was the owner of a farm situated in the town of Frankfort, in the county of Herkimer, subject to a mortgage for $16,250 given by Morris and wife to Betsey Nurse.

On the 8th December, 1859, proceedings to foreclose said mortgage were instituted, and the sale was to be made March 5, 1860. The farm was incumbered by several judgments that had been recovered against Morris. Morris was absent from home, and his wife had the care and management of his property in his absence.

Mrs. Morris being unable to satisfy said lien, applied to the defendant Budlong to attend the sale of said mortgage premises on the 23d March, 1860, to which day the sale thereof had been postponed, and bid the same off, pay the sum for which they were struck off to him, and discharge the other liens thereon, and hold the title as security for the moneys so advanced, and give to

her a year in which to redeem the premises. The proposition was accepted by Budlong, and he agreed with her that upon the payment of said sums he would convey the said premises to her.

Budlong attended the sale, bid in the property for $11,290 87, and took a conveyance thereof to himself. He paid down $1,290 87 of the sum bid by him, in cash, and for the balance he gave the executor of Mrs. Nurse, who owned the mortgage, a mortgage on said farm to secure the balance of the purchase-money.

The amount paid by Budlong in discharge of liens on said premises, junior to the mortgage, was not proved on the trial, nor found by the referee.

By an arrangement between Mrs. Morris and Budlong, entered into after the sale of said farm, Budlong went into possession thereof, cultivated the same, and received to his own use nearly all the proceeds for several years.

Men hired by Budlong boarded with Mrs. Morris, and her sons worked on said farm for him during the time he carried it on. Budlong paid the interest on the mortgage given by him to the executor of Mrs. Nurse, until January 1, 1860, and on that day he paid $2,000 of the principal.

In addition to the board of men and services of Mrs. Morris' sons, Budlong had divers articles of personal property. He was paid the sum of $20,000 in money to apply in payment of the amount paid by him in the purchase of said farm, and in satisfaction of the liens thereon.

Budlong required one Ferguson, who was liable with John Morris, the husband of Mrs. Morris, for a large share of the debts of Morris, to give him (Budlong) a mortgage on his farm in Herkimer county, as security for the sum so claimed by Budlong to be due to him, and to this Ferguson assented, provided Mrs. Morris would give him a mortgage on a part of the farm to be conveyed to Mrs. Morris.

On or about the 31st March, 1866, Mrs. Morris applied to Budlong for a statement of the account between them; but Budlong omitted to render such an account in writing, or otherwise, but told her there was due to him $11,500 for advances to pay for the farm, which claim she conceded to be correct, and that sum was paid to him.

Budlong had taken from one Hubbell the transfer of certain claims or demands he held against Morris and Ferguson, and on which he claimed there was due to him the sum of $3,400, and declined to reconvey the farm until this sum was paid or secured to him.

Mortgages were executed in accordance with these claims. Upon the payment of the money advanced to pay for the farm and the delivery of the mortgages last-mentioned, Budlong executed and delivered to Mrs. Morris a deed of said farm.

After the conveyance by Budlong to Mrs. Morris, she discovered that she had not been allowed by Budlong upon his indebtedness for said farm for the board of Budlong's hired men and the wages of her sons, for personal property belonging to her, appropriated by Budlong to his own use, and to the rents and profits of the farm during the time he was in possession and which, if-allowed, would more than pay Budlong all his advances and compensate him for his time and trouble in the care and management of said farm, and that there was no consideration for the mortgage given by Ferguson to Budlong, nor for that given by Mrs. Morris to Ferguson, and this action was commenced to compel such allowance. The administrators of Mrs. Ferguson foreclosed the mortgage given by Mrs. Morris, bid in the property and went into possession, and were in possession of the same when this action was commenced.

The plaintiff, in his complaint in this action, alleges the foregoing facts, and that when the final arrangement was made between his intestate and Budlong in March, 1866, and she paid him for advances made to pay for said farm, and the mortgages were given by her and Ferguson; that Budlong rendered no account of the sums paid or received by him, but claimed a sum in gross as above stated, as due to him, and that relying on his integrity and regard for her as his sister, she yielded to the claim so made, in ignorance of the fact that no allowances had been made to her for the claims hereinbefore enumerated and he demands judgment; that an account be taken between her and Budlong in regard to the dealings between them, and that the mortgage from Ferguson to Budlong and from Mrs. Morris to Ferguson be canceled and discharged, and that the purchasers of the premises mortgaged to

Ferguson by Mrs. Morris convey the same to the plaintiff and account for the rents and profits, and also asked for·a judgment for the amount paid Budlong over and above what was actually due to him.   The defendants in their answer deny substantially all the allegations of the complaint upon which the right of the plaintiff to relief rests.

The cause was referred and the referee, after hearing the proofs and allegations of the parties, found the facts as above stated and granted the relief prayed for in the complaint, and from the judgment entered on the report the defendants appeal.   This action was commenced the 24th of July, 1874.

*Francis C. Kernan,* for the appellant.

*Risley, Stoddard & Matteson,* for the respondent.

Mullin, P. J. :

Unless the plaintiff's intestate was induced to enter into the settlement or adjustment of the claims of the defendant Budlong against her by fraud, this judgment cannot be sustained.   Mrs. Morris was the sister of Budlong, and, in the absence of evidence of any difficulty between them, it must be assumed that they entertained for each other that measure of affection which exists between those standing in that relation to each other.

It is true that there is evidence that the families of .Budlong and Mrs. Morris were not for a time on visiting terms ; but it does not appear that the feud extended to Budlong and Mrs. Morris.   Indeed, the readiness with which she applied to him for assistance in her trouble, and with which he consented to aid her, justifies the inference that personally they were on friendly terms. Budlong's purchase of the farm for her, and the payment of the liens upon it, were acts of the greatest kindness, and evidence of sincere affection on his part for his sister.   It was natural, in view of these acts and the relationship between them, that Mrs. Morris should repose the greatest confidence in Budlong's regard for her, and she would have been very ungrateful had she doubted his good faith in his dealings with her.   Her husband, as I understand the evidence, was in jail when Budlong agreed to bid in the

farm and pay the judgments that were liens upon it. There was no one to aid her, who had the pecuniary ability, except Budlong. Her sons, I infer, were young, and wholly without means. She could not do otherwise than trust to him. When, therefore, they met at Richardson's office, in Utica, in March, 1866, and Budlong neglected and refused to give her a statement of the amounts advanced by him, and of the sums for which Mrs. Morris was entitled to credit, but he stated the gross amount which was owing him by Mrs. Morris, she might well place confidence in the accuracy of the statement of the amount due, and assume that he had arrived at the balance after giving her credit for all sums, to credit for which she was entitled. The non-disclosure of the fact that he had not given her credit for the board of his men, and for the services of her sons, or for the personal property appropriated by him, was as to her a fraudulent concealment of facts of which she was entitled to be informed, and of which he was in duty bound to disclose. In short, it was a fraud upon her, which entitles her to relief, unless Budlong has some good and sufficient excuse for thus acting.

. The appellant's counsel insists in his points, and in his argument that plaintiff is not entitled to relief, on the ground of fraud, because fraud is not charged in the complaint nor found by the referee. It is true that fraud is not charged in the complaint ; but facts are alleged from which fraud may legitimately be inferred. It would have been better pleading to have charged the defendant with having procured the mortgages by fraud, and with fraudulently concealing from plaintiff this fact, that he had not given her credit for divers sums, to credit for which she was equitably entitled. Fraud was proved, and although the referee, in his findings, alleges that plaintiff was induced to concede the amount claimed by defendant to be due on the settlement, by fraud, or through mistake on her part ; and the proof sustaining the finding, the parties should not be subjected to the expense of another trial, when the error can be corrected by amendment, if deemed necessary. It is the duty of the court, under the circumstances, to treat the pleading as amended, and affirm or reverse the judgment as justice shall require. The statement in the finding that the adjustment made at Mr. Richardson's office was entered into by

plaintiff through a mistake of facts is in a certain sense correct; but it is the mistake that is made by every person who is induced by fraud to do an act which is injurious to his interests. But the *causa causans* is fraud, and the plaintiff's right of action has its origin in the fraud of Budlong.

In the first Story's Equity Jurisprudence (§ 309), the learned author says the courts of equity do not sit to enforce what has, not inaptly been called, a technical morality. If confidence is reposed it must be faithfully acted upon and preserved from any intermixture of imposition. If influence is acquired it must be kept free from the taint of selfish interests and cunning and over-reaching bargains. Courts of equity will not therefore arrest or set aside an act or contract merely because a man of honor would not have entered into it. There must be some relation between the parties which compels the one to make a full discovery to the other or to abstain from all selfish projects. But when such a relation does exist, courts of equity acting upon this superinduced ground, in aid of general morals, will not suffer one party, standing in a situation of which he can avail himself against the other, to derive advantage from that circumstance, for it is founded in a breach of confidence. The general principle which governs in all cases of this sort is that, if a confidence is reposed and that confidence is abused, courts of equity will grant relief.

That Mrs. Morris placed implicit confidence in Budlong cannot be questioned. That she kept no account of the money paid or property delivered to him, or of the services rendered by her to him, is found by the referee.

It was the duty of Budlong to keep an account of his dealings with Mrs. Morris so that a fair and just settlement of their dealings might be had. This he did not do. All the information he would give her, as to his transactions with her and on her behalf, was his verbal statement that a gross sum was due him from her. From the relationship between them she might well believe that the balance claimed was actually and honestly due to Budlong, after deducting all payments made by her to him and all property received by him to apply on his advances. But it is found by the referee that nothing whatever was allowed by Budlong to her, for divers advances made by her to him, to apply in

reduction of his demands against her. Budlong knew the state of the accounts between himself and Mrs. Morris, and he knew that she did not know it, he stood in the attitude of taking advantage not only of his superior knowledge but of her confidence in him to deceive and defraud her. It is no answer to this charge to say it was the duty of Mrs. Morris to ascertain whether all proper allowances has been made her, before she admitted her liability to pay the balance claimed by Budlong and secured it by the mortgage to Ferguson, and had she been vigilant she might have ascertained that Budlong claimed too much as due to him.

The same may be said in almost every case of fraud. The party defrauded might by diligence ascertain the truth, detect the fraud and defeat it. But it does not lie with the party guilty of the fraud to impute want of vigilance in the party defrauded, unless the transaction is such as to put the other party on inquiry and that inquiry, if made, would have resulted in a discovery of the fraud.

The appellant's counsel insists that Mrs. Morris ought not to maintain the action because she could not enforce the performance of the agreement between her and Budlong as to the purchase of the farm on the foreclosure by Budlong, and the conveyance of it by him on payment of his advances therefor.

When that arrangement was made the title to the farm was in Morris, but the sale on foreclosure divested his title and it passed to Budlong.

If it be true that Mrs. Morris had not such an interest at the time the title was conveyed to Budlong as would enable her to compel him to convey it to her on payment of his advances, yet when he accepted payment from her, and treated her as the person entitled to a conveyance, he cannot shield himself from the consequences of fraudulently exacting from her a greater amount than was honestly due him, upon a fair settlement of the accounts between them.

After he had consented to accept payment of his advances from Mrs. Morris, an accounting became indispensable, and into that accounting must enter all sums which Budlong had received to apply on his advances, and this entitled Mrs. Morris to a full and accurate statement of all sums received by him, which should go in reduction of his claim.

A court of equity only can set aside the mortgages given by Mrs. Morris to Ferguson, and by Ferguson to Budlong, and the conveyances following the foreclosure of the Ferguson mortgage. In such case the statute of limitations does not bar the right of recovery until the expiration of six years from the discovery of the fraud. (Code of Civil Procedure, § 89, subsec. 6.)

The referee finds that plaintiff did not discover the fraud until August, 1872. The action was commenced in July, 1874, so that the statute is not a bar.

The judgment should be affirmed, with costs.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment affirmed, with costs.